**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JOHN O'DONNELL,                          )
                                         )
    Plaintiff,                           )        Case No.: 17-cv-7561
                                         )
v.                                       )
                                         )        **COMPLAINT**
INTERNATIONAL PAPER COMPANY,             )
                                         )        **JURY DEMANDED**
    Defendant.                           )

Now comes the Plaintiff, JOHN O'DONNELL, by and through his attorneys, and for his Complaint against the Defendant, INTERNATIONAL PAPER COMPANY, Plaintiff alleges and states as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for damages and equitable and injunctive relief for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, both as amended as well as for violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

2.      Specifically, Plaintiff contends that he is an individual within the meaning of the FMLA, that Defendant willfully retaliated against Plaintiff for exercising his rights under the FMLA and discharged him because of his exercise of his rights, in violation of the FMLA.

3.      All conditions precedent to this Court's jurisdiction have occurred or have been complied with. Specifically:

        a.      Plaintiff filed a Charge of Discrimination, number 440-2017-03386, with the Equal Employment Opportunity Commission ("EEOC") on April 24, 2017.

b.   The EEOC issued a Notice of Suit Rights to Plaintiff for said charge on July 21, 2017.

**JURISDICTION AND VENUE**

4.   Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

5.   Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

**PARTIES**

6.   Plaintiff is an individual who was at all relevant times residing in Des Plaines, Illinois.

7.   On information and belief, Defendant is a corporation of the State of New York, which is licensed to do business in Illinois, and whose principal place of business is located in Memphis, Tennessee.

8.   Defendant is a "person" as defined in 42 U.S.C. § 2000e(a), as it is a corporation that includes one or more individuals.

9.   Plaintiff and Defendant are also both "persons" as defined in 29 U.S.C. § 2611(8), as they are "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."

10.   Defendant is an "employer" as defined in 42 U.S.C. § 12111(5)(A), as it is a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

11.   Defendant is also an "employer" as defined in 42 U.S.C. § 2000e(b), as it is a person engaged in an industry affecting commerce who has fifteen or more employees for each

2

working day in each of twenty or more calendar weeks in the current or preceding calendar year.

12. Defendant is also an "employer" as defined in 29 U.S.C § 2611(4)(i), as it is "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year."

13. Plaintiff is an "employee" as defined in 42 U.S.C. § 12111(4), as he is an individual employed by an employer.

14. Plaintiff is also an "employee" as defined in 42 U.S.C. § 2000e(f), as he is an individual employed by an employer.

15. Plaintiff is an "eligible employee" as defined in 29 U.S.C. § 2611(2)(A), as he was an employee who had been employed "for at least 12 months by the employer with respect to whom leave [had been] requested" and "for at least 1,250 hours of service with such employer during the previous 12-month period."

16. Plaintiff was a "qualified individual" as defined in 42 U.S.C. § 12111(8), as he was an individual who, with or without reasonable accommodation, could perform the essential functions of the employment position that he held. Plaintiff suffered from severe hearing loss.

17. Plaintiff is a member of a multiple legally protected classes based upon the following:

    a. His race, Caucasian; and

    b. His national origin, Ireland.

## BACKGROUND FACTS

18. Plaintiff began his employment with Defendant on or about July 28, 2014.

19. Plaintiff's most recent position with Defendant is a Transfer Car Operator.

20.     Throughout his employment with Defendant, Plaintiff has performed the duties of his jobs to all legitimate expectations.

21.     Plaintiff is a member of legally protected classes based upon his race, Caucasian, and his national origin, Irish.

22.     During his employment, Plaintiff was harassed and subjected to different terms and conditions of employment by his former supervisor, Dung Ngo ("Ngo").

23.     One or more similarly-situated employees outside of Plaintiff's protected class were treated more favorably than Plaintiff.

24.     On or about November 14, 2016, Plaintiff's daughter was involved in a serious automobile accident in Phoenix, Arizona.

25.     On or about November 15, 2016, Plaintiff took a week of FMLA leave to travel to Arizona to help care for his daughter.

26.     On or about November 22, 2016, Plaintiff returned from his FMLA leave but continued to travel to Phoenix on an occasional basis to help care for his daughter.

27.     During or about December of 2016, Plaintiff learned that Defendant's timesheets reflected that he had been sick during days he was using FMLA leave time.

28.     On or about December 20, 2016, Plaintiff received a denial of his FMLA claim despite the fact that he had not yet submitted all of the requested paperwork for his FMLA time.

29.     At about same time, Plaintiff approached Katherine Pizarro ("Pizarro"), a human resources representative for Defendant, to ask about the denial of his right to use his FMLA leave.

30.     Pizarro told Plaintiff that she would take care of the problem, but to date Plaintiff has not received any information concerning a correction of Defendant's records related to his use of FMLA leave time.

4

31.     On or about January 12, 2017, Defendant posted a third-shift job opening in its shipping department.

32.     On information and belief, Defendant's policies regarding inter-office transfers are that the person with the most job seniority who applies for a given job opening should be picked first for the transfer.

33.     Plaintiff desired a change to third-shift to make it easier for him to help take care of his daughter who had been seriously injured in the automotive accident.

34.     On or about January 19, 2017, Defendant awarded Plaintiff the job transfer for which he had applied in the shipping department. Plaintiff signed document indicating he accepted the transfer.

35.     Ngo had recently been promoted to a supervisor in the shipping department.

36.     On or about January 23, 2017, Plaintiff started a probationary period in the shipping department as a clerk. The purpose of this period was for Plaintiff to learn the various aspects of the job in the shipping department.

37.     Plaintiff was only allowed to work for two weeks of his probationary period.

38.     During the two weeks, Ngo would frequently ridicule Plaintiff by saying that he did not listen despite Plaintiff explaining that he suffers from severe hearing loss.

39.     Ngo would also frequently tell Plaintiff that he was not going to allow Plaintiff to keep his new position in the shipping department.

40.     On or about February 4, 2017, Ngo called Plaintiff into a meeting for the purpose of disqualifying Plaintiff from his new position in the shipping department over a false allegation of a safety violation.

41.     Also in attendance at the meeting was Plaintiff's union representative, Ricardo

Sosa, Jr. ("Sosa") and Robert Villareal ("Villareal"), another supervisor employed by Defendant.

42.     Ngo accused Plaintiff of not locking an airline on a trailer despite the fact that Plaintiff had locked the airline.

43.      After Ngo disqualified Plaintiff from the shipping department position, Villareal told Plaintiff to come in for his next regular shift and that Defendant would then transfer him back to his former position of Transfer Car Operator.

44.     When Plaintiff came in for his next regular shift, Villareal brought him a voluntary disqualification form for Plaintiff to sign.

45.     Plaintiff refused to sign the form because he did not want to voluntarily disqualify himself from his new position in the department. The decision to disqualify Plaintiff from his position in the shipping department was made by Ngo against Plaintiff's wishes. Plaintiff also refused to sign the form because company policy stipulated that an employee who voluntarily disqualifies themselves is not able to apply for another transfer for approximately six months.

46.     On or about February 6, 2017, Plaintiff spoke with Matt Anderson ("Anderson"), a co-worker, about the events that had transpired with Ngo.

47.     Through his conversation with Anderson, Plaintiff discovered that after Plaintiff had been awarded the bid to transfer to the shipping department, Ngo had told Anderson that he was not going to allow Plaintiff to qualify for the position.

48.     Plaintiff also discovered through his conversation with Anderson that Ngo gave the open shipping department position, from which Plaintiff had been disqualified, to another Vietnamese employee, Kiet Nguyen ("Nguyen") who was of the same race and national origin as Ngo.

49.     On information and belief, on or about February 7, 2017, Defendant's plant

6

manager, Martha Farabaugh ("Farabaugh"), began an investigation based upon a complaint made by Plaintiff that he was discriminated against by Ngo.

50.     On information and belief, Defendant did not conduct an investigation with any level of detail that would have allowed Defendant to determine whether Plaintiff's allegations of discrimination were true.

51.     On or about February 13, 2017, Defendant assigned Jocelyn Kooyers ("Kooyers"), its Regional Human Resources Director, to investigate Plaintiff's claims.

52.     On or about February 24, 2017, Plaintiff contacted a list of witnesses he had given to Kooyers and learned that she had not spoken with any of them.

53.     During this time, Plaintiff bid on three separate job postings, but was denied all three because Defendant had labeled Plaintiff's previous position as a self-disqualification, despite the fact that Plaintiff did not sign the voluntary disqualification form.

54.     The position which Plaintiff had been awarded in Defendant's shipping department was at a higher rate of pay than Plaintiff's former and current Transfer Car Operator position. In addition, more opportunities existed in the shipping department position for overtime hours, for additional pay, than exist in Plaintiff's former and current Transfer Car Operator position.

55.     As a result, Nguyen is now earning significantly more than Plaintiff in both his base pay and his overtime pay. On information and belief, had Plaintiff been allowed to remain in the shipping department position, he would be earning substantially the same amount as Nguyen.

56.     Prior to instituting his internal complaint with Defendant claiming that he had been discriminated against by Ngo, Plaintiff was routinely granted the opportunity to work voluntary overtime hours for additional pay, performing safety inspections. Plaintiff worked approximately 32 hours of overtime per month performing these inspections.

57.     After he made his internal complaint with Defendant claiming that he had been discriminated against by Ngo, Plaintiff was denied the opportunity to work these voluntary overtime hours.

## COUNT I
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

58.     Plaintiff incorporates all of the allegations and statements contained in paragraphs 1 through 57 above as if reiterated herein.

59.     Defendant intentionally discriminated against Plaintiff on the basis of his disability by making discriminatory and harassing comments to Plaintiff regarding his disability and by denying him the same opportunities which were made available to other employees who did not suffer from the same disability.

60.     Defendant's actions were in willful and wanton violation of Plaintiff's rights.

## COUNT II
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

61.     Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 60 above as if fully reiterated herein.

62.     Defendant, in violation of 42 U.S.C. § 2000e, has denied and continues to deny Plaintiff an equal opportunity for employment because of his race and/or national origin.

63.     During Plaintiff's employment with Defendant, he has been subjected to discrimination in that Ngo treated him in a manner that created a hostile work environment.

64.     Ngo also treated Plaintiff differently than he treated other employees who were not Caucasian and/or of Irish national origin.

65.     Defendant also retaliated against Plaintiff when he complained about having been discriminated against by Ngo.

8

66. All of the actions of the individuals described above were undertaken in their capacities as the employees, agents and/or authorized representatives of Defendant.

67. Defendant, through its employees, agents and/or authorized representatives, knew that its discriminatory treatment of Plaintiff violated Title VII.

68. This is a proceeding for declaratory judgment as to Plaintiff's right of a permanent injunction restraining Defendant from maintaining a policy, practice, usage or custom of discriminating against Plaintiff with respect to compensation, terms, conditions and/or privileges of employment, depriving Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee, because of his sex, race, national origin and/or religion. This Complaint also seeks restitution to Plaintiff for the denial of all of his rights, privileges, benefits and income that would have been received by him, but for Defendant's unlawful and illegal discriminatory acts and practices.

69. Plaintiff has no plain, adequate or complete remedy at law to address the wrongs alleged herein, and this suit for injunctive relief is his only means of securing adequate relief. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's policy, practice, custom and usage as set forth herein, unless and until it is enjoined by the Court.

### COUNT III
### VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

70. Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 69 above as if fully reiterated herein.

71. The acts and conduct of Defendant as aforesaid were in willful violation of the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* Said statutes impose certain duties upon Defendant concerning retaliation against persons, such as Plaintiff, on the basis of their exercise of FMLA leave and the prohibition of said retaliation. Said statutes were intended to prevent the

type of injury and damage herein set forth.

72. By the acts and conduct described above, Defendant was willfully in violation of said statutes, knew about, or should have known about, and failed to investigate, prevent or remedy the retaliation. The acts of retaliation described herein were sufficiently pervasive so as to alter the conditions of employment, and created an abusive working environment. When Plaintiff was retaliated against, Plaintiff's exercise of his FMLA leave was a substantial factor motivating and/or motivating reason in Defendant's conduct.

73. By the aforesaid acts and conduct of Defendant, Plaintiff has been directly and legally caused to suffer actual damages pursuant to 29 U.S.C. § 2617 including, but not limited to, loss of earnings and future earning capacity, attorneys' fees, and other pecuniary loss not presently ascertained.

74. As a direct and legal result of the acts and omissions of Defendant, Plaintiff suffered, among other things, stress, aggravation, frustration, emotional distress, and pain and suffering. The exact nature and extent of said injuries is presently unknown to Plaintiff.

75. The aforementioned acts of Defendant were willful, wanton, malicious, intentional, oppressive and despicable and were done in willful and conscious disregard of the rights, welfare and safety of Plaintiff, and were done by managerial agents and employees of Defendant and with the express knowledge, consent, and ratification of managerial agents and employees of Defendant, thereby justifying an award of punitive and exemplary damages in an amount to be determined at the time of trial.

76. As a result of the acts of Defendant as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as specifically provided in 29 U.S. C. §2617(a)(3).

Wherefore, Plaintiff, JOHN O'DONNELL, respectfully prays this Honorable Court enter

judgment against Defendant, INTERNATIONAL PAPER COMPANY, as follows:

    a.    Declaring the Defendant's practices complained of herein unlawful and in violation of the ADA, Title VII, and the FMLA;

    b.    Permanently enjoining Defendant, its agents, successors, officers, employees, representatives, attorneys and those acting in concert with it or them from engaging in the unlawful practices, policies, customs and usages set forth herein, and from continuing any and all practices shown to be in violation of applicable law;

    c.    Ordering modification or elimination of the practices, policies, customs and usages set forth herein and all other such practices shown to be in violation of applicable law, ensuring Defendant will not continue to discriminate on the basis of age, sex, religion, race, national origin or disability or retaliate against employees exercising their rights under the FMLA;

    d.    Immediately assigning Plaintiff to the position he would now be occupying but for the discriminatory practices of Defendant, and adjusting the wage rates, salaries, bonuses and benefits for Plaintiff to those which he would have received but for the discriminatory practices of Defendant, or awarding Plaintiff front-end and future pay;

    e.    Compensating and making Plaintiff whole for all earnings, wages, bonuses and other benefits that Plaintiff would have received but for the discriminatory practices of Defendant and the willful violations of Defendant;

    f.    Compensating and making Plaintiff whole for all other damages Plaintiff

incurred as a result of the discriminatory practices of Defendant and the willful violations of Defendant;

g.    Awarding Plaintiff all witness fees, court costs and other litigation costs incurred in this Action, including reasonable attorneys' fees; and

h.    Awarding Plaintiff liquidated and/or punitive damages for Defendant's willful conduct, and granting such other relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorneys' fees and litigation costs to be awarded should Plaintiff prevail on any of his claims in this action.

RESPECTFULLY SUBMITTED,

JOHN O'DONNELL

By:    /s/ David B. Levin
      Attorney for Plaintiff
      Illinois Attorney No. 6212141
      Law Offices of Todd M. Friedman, P.C.
      111 West Jackson Blvd., Suite 1700
      Chicago, IL 60604
      Phone: (312) 212-4355
      Fax: (866) 633-0228
      dlevin@toddflaw.com